UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| HENRY L. WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:03-CV-348-TS |
| | ) | |
| CSX TRANSPORTATION, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on the Motion for Summary Judgment Pursuant to 45 U.S.C. § 56 [DE 26], filed by the Defendant, CSX Transportation, Inc., (CSX) on October 29, 2004. The Defendant has moved for summary judgment on the basis of its contention that the three year statute of limitations contained in 45 U.S.C. § 56 had run when the Plaintiff filed his Complaint on September 15, 2003. The Defendant claims that the Plaintiff knew he was experiencing numbness and pain in his fingers and hands as early as 1997 and did not reasonably investigate the cause of his problems. The Plaintiff contends that his action is not time-barred, since he acted responsibly and reasonably was first diagnosed with carpal tunnel syndrome in 2002.

**SUMMARY JUDGMENT STANDARD**

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c)). Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the non-moving party's case." *Id.* at 325.

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Local Rule 56.1 sets forth the non-moving party's responsibility with greater specificity:

> In determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion, as supported by

the depositions, discovery responses, affidavits and other admissible evidence on file.

N.D. Ind. L.R. 56.1(b). Thus, to the extent a non-moving party fails to object to the moving party's statement of material facts, this Court will construe the non-moving party's silence as admissions and take the uncontested facts from the movant's brief as admitted to exist without controversy. *See Bradley v. Work*, 154 F.3d 704, 707–08 (7th Cir. 1998) (citing *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921–22 (7th Cir.1994) (collecting cases where we have "repeatedly upheld the strict enforcement" of Local Rule 56.1 and its ilk); *Kunik v. Racine County*, 106 F.3d 168, 174 (7th Cir.1997); *Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir.1995)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50; *Doe*, 42 F.3d at 443.

## FACTS

Resolving all genuine disputes and drawing all reasonable inferences in the Plaintiff's favor, the facts assumed to be true for purposes of ruling on the Defendant's Motion for Summary Judgment are as follows.

The Defendant, CSX, hired the Plaintiff, Henry L. Williams, as a brakeman and conductor in 1974. Williams's job involves working with his hands and performing such tasks as throwing

switches, handling drawbars, setting and releasing handbrakes, working with air brake hoses, and getting on and off railroad cars. His duties have remained the same since he was first hired, though he performed some of these tasks more frequently in recent years compared to when he first began.

On March 4, 1997, Williams visited his primary care physician, Dr. Alfred Stovall, complaining that he was suffering, at times, from numbness in his fingers. Dr. Stovall made no diagnosis at this time. Weeks later, on April 1, Williams saw Dr. Stovall again, complaining of numbness in his right hand. Williams asked Dr. Stovall to give him a complete physical. Having examined Williams and considered his complaints, Dr. Stovall diagnosed Williams with "possible nicotine effect and possible Raynaud's phenomenon." Dr. Stovall testified that a person can get poor circulation from smoking cigarettes and Raynaud's phenomenon is marked by the sort of numbness and tingling in the fingers the Plaintiff had reported. Dr. Stovall did not diagnose Williams with carpal tunnel syndrome (CTS) and did not even consider such a diagnosis.

Williams returned to Dr. Stovall's office a year later, on February 17, 1998, complaining of pain in his left elbow. It appears that Williams discussed his job with his doctor, as one note in Williams' records from this visit states that Williams is a railroad conductor and uses his elbow and arm eighty percent of the time. It is not clear that anyone made a connection between his injury and his job. Neither Williams nor anyone in Dr. Stovall's office mentioned CTS. Instead, Williams was diagnosed with tennis elbow, a form of bursitis.

The next year, Williams saw Dr. Stovall again, on May 27, 1999, this time complaining of "left side pain, spasm, and left leg pain with left foot numbness and . . . right and left fingers numbness at bedtime." Dr. Stovall additionally noted that Williams was complaining of back and leg pain. He gave Williams a muscle relaxant and sent him to a neurologist. It does not appear that

4

anyone discussed either CTS or Williams's work at this visit. Dr. Stovall retired in the middle of 1999 and did not see Williams again.

In 2002, after he had been suffering for a few weeks from a burning sensation in his hands, Williams went to see his family doctor, Dr. Morgan. "It was a constant burning, just like someone had a, if you been outside and had your hands, got real, real cold like they been frozen, trying to thaw out, an achy feeling you wouldn't believe, and I was having that continuously." (Page 43, Williams Supplemental Dep.) Dr. Morgan referred Williams to Dr. Bhupendra Shah, a neurologist. Dr. Shaw performed an EMG and told Williams he had CTS. Prior to being diagnosed with CTS, Williams had never felt that he had a work-related problem in his hands.

Williams filed this action on September 15, 2003, under the Federal Employers Liability Act, 45 U.S.C. §§ 51–50 ("FELA"), seeking damages for carpal tunnel syndrome of the hands and arms allegedly sustained during his employment with CSX.

## ANALYSIS

The only issue on the Defendant's Motion for Summary Judgment is when the Plaintiff's cause of action accrued under FELA. Under FELA, "[n]o action shall be maintained under this chapter unless commenced within three years from the day the cause of action accrued." 45 U.S.C. § 56. Accrual, for statute of limitations purposes, is defined in terms of two components: the injury and its cause. *Fries v. Chicago & Northwestern Transportation Company*, 909 F.2d 1092, 1094 (7th Cir. 1990). In some cases, the date of the injury is easy to identify. However, in cases involving progressive conditions, it may be more difficult to pinpoint a time. *Tolston v. Nat'l R.R. Passenger Corp.*, 102 F.3d 863, 865 (7th Cir. 1996). When the specific date of the injury cannot be determined

5

because the injury resulted from continuous exposure to a harmful condition over a period of time, a plaintiff's cause of action accrues when the injury manifests itself. *Id.* (citing *Urie v. Thompson*, 337 U.S. 163, 170 (1949)). Therefore, "[t]he key is knowledge of the injury and, by extension, knowledge of the cause of that injury; it does not matter whether the plaintiff realizes that a *legal* wrong has occurred." *Id.* (citing *United States v. Kubrick*, 444 U.S. 111, 122–23 (1979); *Goodhand v. United States*, 40 F.3d 209, 212 (7th Cir. 1994)).

Following *Urie* and *Kubrick,* the Seventh Circuit has summarized the rule for FELA cases as follows: "a cause of action accrues for statute of limitations purposes when a reasonable person knows or in the exercise of reasonable diligence should have known of both the injury and its governing cause." *Fries*, 909 F.2d at 1095. Both components require "an objective inquiry into when the plaintiff knew or should have known, in the exercise of reasonable diligence, the essential facts of injury and cause." *Id.* If there are many possible causes, all that is required is that the plaintiff know or have reason to know of a potential cause. Actual knowledge by plaintiff of causation is not necessary to a finding that a cause of action has accrued." *Fries*, 909 F.2d at 1096; *Nemmers v. United States*, 795 F.2d 628, 631–32 (7th Cir. 1986); *Drazan v. United States*, 762 F.2d 56, 59 (7th Cir. 1985). Additionally, an injury need not have reached its maximum severity before a claim accrues. *Fries*, 909 F.2d at 1096. "Just to be clear, . . . this rule imposes on plaintiffs the affirmative duty to investigate the cause of a known injury." *Tolston*, 102 F.3d at 865.

In this case, the Defendant does not argue that the Plaintiff knew he had carpel tunnel syndrome and that it was caused by his work at CSX before September 15, 2000. Therefore, the only issue before the Court on the Defendant's Motion for Summary Judgment is whether the Plaintiff should have known, through the exercise of reasonable diligence, the essential facts of injury and

6

cause before this date.

**A.     *Fries* and *Tolston***

The Defendant briefly argues that the Seventh Circuit's reasoning in *Fries* and *Tolston* require this Court to grant its motion for summary judgment. However, the Court notes significant differences between these cases and the facts presently before the Court.

*Fries* concerned a plaintiff who had first noticed a decline in his hearing in 1980 or 1981, but did not inform his employer or seek medical treatment regarding his condition until 1985. *Fries*, 909 F.2d at 1094. The district court determined that a reasonable person, when confronted with the facts Fries possessed in 1981 about his hearing loss and the nature of his injury, would have investigated the cause of his injury. *Id.* at 1097. The Seventh Circuit affirmed this determination and the district court's conclusion finding that Fries' cause of action accrued in 1980 or 1981 when the alleged occupational disease became known to him and when he should have reasonably known the injury was work-related. *Id.* at 1094. Accordingly, the statute of limitations had run when he filed his complaint in 1987. *Id.*

In this case, unlike in *Fries*, the Plaintiff did not wait years to see a doctor. The Plaintiff visited his family doctor, Dr. Stovall, twice in 1997 and once in 1998 and 1999. The Defendant does not challenge the Plaintiff's account that the first doctor's visit he mentions, in March 1997, took place shortly after he started experiencing some numbness in his fingers. Accordingly, the Court finds *Fries* distinguishable from the facts of this case.

In *Tolston*, the plaintiff was suffering from extreme knee pain since at least 1989. Although she promptly sought medical treatment and medication for her pain, the plaintiff admitted that she

7

never asked anyone about the source of her pain, up to and including the moment when Dr. Rosenberg volunteered that it might be work-related after her surgery in 1992. The Seventh Circuit held that the pain she had been suffering was enough to require her to do some investigating into the potential causes of her condition. The Court held that, with the exercise of reasonable diligence, the plaintiff should have known about the cause of her medical condition before April 1992 and therefore her May 1995 FELA action was time-barred. *Tolston*, 102 F.3d at 866.

In this case, unlike in *Tolston*, the Plaintiff did discuss the possible causes of his condition with his doctor, beginning with his April 1997 visit, when Dr. Stovall told him that his condition was possibly related to smoking. The Defendant makes much of the fact that, when the Plaintiff visited Dr. Stovall's office in February 1998, someone noted that he was a railroad conductor and used elbow and arm eighty percent of the time. However, this only makes clear that this Plaintiff was more diligent than Tolston. Because the Plaintiff discussed the possible causes of his ailments during several of his doctor's visits, *Tolston* does not control this case.

**B.    Knowledge of Cause and Essential Facts of Injury**

Having determined that the facts of this present case are distinguishable from those in *Fries* and *Tolston*, the Court turns to the Parties' other arguments. Most of the Defendant's briefs focus on establishing that the Plaintiff should have known that his injury was job-related. This is a strong case, for other than Dr. Stovall's original suggestion that the Plaintiff's symptoms were related to smoking, the feedback the Plaintiff was getting from his medical visits, as well as his common sense, should have informed him that his complaints were job-related. However, the Defendant is not entitled to summary judgment unless it is established that the Plaintiff should have known not only

the cause but also the essential facts of his injury before September 15, 2000.

The Plaintiff contends that his suit is only on the basis of his CTS, and therefore his earlier symptoms are irrelevant unless a reasonably diligent person in his situation would have known that he had CTS earlier. The Plaintiff argues that he was reasonably diligent, relying heavily upon an order from another court in the Northern District of Indiana, dated June 24, 2004, denying summary judgment in *Richard Helm v. CSX Transportation, Inc.*, Cause 1:03-CV-87.[1] The Court will review that order and consider whether the Defendant has successfully distinguished it from the facts presently before the Court.

Helm started to develop pain in his arms and hands in the 1980s. He responsibly sought medical treatment for his symptoms and in 1987 was diagnosed with tennis elbow, a form of bursitis. *Helm* at 2. In 1988, Helm began to develop pain in his left arm, specifically his elbow, and numbness on two fingers of his left hand. Helm was referred to a specialist who performed an EMG. That doctor diagnosed Helm with "very mild carpal syndrome," but did not share this diagnosis with Helm. *Id.* Despite the diagnosis, Helm was treated for bursitis and the pressure band his doctor prescribed alleviated his symptoms.

Helm continued to work and did not experience pain again until April 2000, this time in his right shoulder. Helm saw his doctor again, but his symptoms cleared up when he started taking over-the-counter analgesics. In 2001, pain returned to Helm's right arm and, for the first time, he experienced pain in his right hand. In November, he saw his family doctor and then a specialist who performed an EMG and told Helm that he had CTS in both arms.

CSX argued in that case, as it does here, that Helm's claims were barred by FELA's statute

---

[1] The Plaintiff supplied a copy of this Order along with his Response to the Defendant's Motion for Summary Judgment.

9

of limitations. The court held that Helm had acted with all reasonable diligence, as he promptly sought medical treatment for his symptoms. *Id.* at 7–8. Because he had acted reasonably, the court held that his cause of action did not accrue until he in fact learned he had CTS.

> Clearly, Helm used reasonable diligence to discover the injury that was causing his symptoms in 1988 by seeking medical treatment from qualified physicians, who diagnosed his ailment as bursitis and not carpal tunnel syndrome. Helm had no reason to believe that his injury was anything but bursitis and had no reason to know that the EMG report indicated mild carpal tunnel syndrom in his left hand. Consequently, Helm did not know nor should he have known that he had mild carpal tunnel syndrom in 1988. As a result, a cause of action did not accrue at this time and CSX cannot prevail on summary judgment based upon the three-year statute of limitations set out in 45 U.S.C. § 56.

*Id.* at 8

The Defendant has failed to distinguish *Helm* from the facts of this case. Its only attempt notes that in *Helm*, unlike in this case, the plaintiff's doctors concluded that he had CTS years before the plaintiff was told so. It is not clear why the Defendant believes that this distinction makes its case for summary judgment in this case more compelling. On the contrary, CSX's case for summary judgment is even weaker in this case, since there is no similar concrete evidence that the Plaintiff had CTS before his doctor gave him this diagnosis.

The similarities between this case and Helm are more significant than the differences. In both cases, the plaintiff dutifully sought medical treatment. Also, in both cases the plaintiffs were initially given diagnoses other than CTS. Here, the Plaintiff was first told that his symptoms were likely related to smoking and possibly Reynaud's phenomenon. The Defendant cites a medical dictionary for the proposition that Reynaud's disease can cause CTS. However, there is no evidence that the Plaintiff was made aware of this fact and

reasonable diligence does not require scouring through medical reference books.

The Plaintiff was next told that his condition was tennis elbow, just like Helm. As in *Helm*, the Plaintiff acted reasonably in accepting his doctor's prognosis. And as in *Helm*, the statute of limitations on the Plaintiff's FELA claim based on CTS did not start to run when he was told he had bursitis.

If anything, the Plaintiff in this case was more diligent than Helm. Thirteen years passed after Helm was told he had bursitis before he returned to his doctor, complaining of symptoms related to CTS. In this case, less than two years passed before the Plaintiff returned to Dr. Stovall's office, complaining of spasm and pain in his left side, leg pain, numbness in his left foot, and numbness in his right and left fingers at bedtime. Dr. Stovall examined the Plaintiff and prescribed him some muscle relaxants. It was only in 2002 that the Plaintiff learned from Dr. Shah that he had CTS.

In this case, the Plaintiff did not delay in bringing symptoms to his doctors' attention. He did not rest after he received his first diagnosis, but returned to the doctor several times, presenting different symptoms, seeking relief and better answers. These were reasonable steps to take, and the law does not require more.

For the reasons stated, the Court finds that the Plaintiff acted with reasonable diligence. Since the Parties do not dispute that the Plaintiff did not learn that he had CTS until 2002, the Court finds that the statute of limitations on the Plaintiff's cause of action against the Defendant under FELA for his CTS did not begin to run until this time. Accordingly, the Court finds that the statute of limitations had not run when the Plaintiff filed the present lawsuit in 2003.

**CONCLUSION**

For these reasons, the Court DENIES the Defendant's Motion for Summary Judgment Pursuant to 45 U.S.C. § 56 [DE 26].

SO ORDERED on July 27, 2005.

                                                S/ Theresa L. Springmann
                                                THERESA L. SPRINGMANN
                                                UNITED STATES DISTRICT COURT